## Pennsylvania Co., etc., et al. *v.* Sun Co.

*Equity practice—Demurrer—Hearing.*

1. The effect of a demurrer to a bill in equity is to admit all the allegations of fact contained in the bill, and all inferences which may reasonably be drawn therefrom.

2. Where the averments of the bill, admitted by the demurrer, are held insufficient to justify equitable relief, no useful purpose would be served by holding a hearing to receive evidence and make formal findings of facts, and the refusal to hold such a hearing is not error.

*Equity—Injunction—Nuisance—Anticipated nuisance—Proof—Gasoline and oil—Storage—Fire hazard.*

3. An owner of property has a right to make such use of it as he may choose, unless his use of his property constitutes an injury to the rights of surrounding property owners.

4. Equity will enjoin such a use where the resulting injury is irreparable and cannot be compensated by damages at law, or where a multiplicity of suits will be necessary to protect the complainant's rights.

5. The injury must be one which interferes with the ordinary use of the complainant's property, or which threatens the health

or welfare of the occupant; a mere diminution in the value of the property will not afford grounds for equitable relief.

6. In this age, property owners must subject their personal comfort to the commercial necessities of carrying on trade or business; when the individual is affected only in his tastes, his personal comfort or pleasure, or preference, these he must surrender for the comfort and preferences of the many.

7. The use of property for some businesses, in certain localities, constitutes a nuisance per se where the carrying on of the business inevitably results in damage to property and injury to the health of the owners or occupants, no matter how carefully it is conducted.

8. The distinction between nuisances per se, and nuisances resulting from the manner in which the business is conducted, lies in the proof required, not in the remedy; in the first class of cases, the right to relief is established by proof of the act alone, while in the second class, there must be proof of the act and its consequences.

9. Where the nuisance is wholly prospective, the complainant must show (a) that the proposed construction or the use to be made of the property will be a nuisance per se, *or* (b) that, while it may not amount to a nuisance per se under ordinary conditions, a nuisance must necessarily result from the contemplated act or construction under the circumstances of the case.

10. The injury must be actually threatened, not merely anticipated; it must be practically certain, not merely probable.

11. The construction of storage tanks, of 75,000 gallons capacity, for oil products, approximately 80 feet from the line of the complainant's property, is not a nuisance per se, and will not necessarily impair the value of adjoining property, or interfere with the complainant's use and enjoyment thereof.

12. The storage of gasoline in large quantities does not constitute a nuisance per se, and will not create a fire hazard where it appears that the storage tanks will be surrounded by fire ditches and will be equipped with all modern appliances to protect adjoining property; the manner of storage determines the question of danger of fire.

Argued April 13, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 110, Jan. T., 1927, by plaintiffs, from decree of C. P. Delaware Co., June T., 1922, No. 949, dismissing bill in equity, in case of Pennsylvania Co. for Insurances on Lives and Granting Annuities, Trustee for

Susan A. Poulson, and the said Susan A. Poulson v. The Sun Co. Affirmed.

Bill for injunction. Before JOHNSON, P. J., and BROOMALL, J.

The opinion of the Supreme Court states the facts. Bill dismissed. Plaintiffs appealed.

*Error assigned,* inter alia, was decree, quoting record.

*John E. McDonough,* with him *John A. Poulson,* for appellants.—The effect of the demurrer was to admit the allegations of the bill: see Kurtz v. R. R., 187 Pa. 59; Getty v. Penna. Institute, 194 Pa. 571; Pew v. Minor, 216 Pa. 343; Engle v. Pottsville, 66 Pa. Superior Ct. 356.

An anticipated nuisance will be restrained: Evans v. Fertilizing Co., 160 Pa. 209; Hibberd v. Edwards, 235 Pa. 454; Phillips v. Donaldson, 269 Pa. 244; Krocker v. Planing Mill Co., 274 Pa. 143; Houghton v. Kendrick, 285 Pa. 223; Prendergast v. Walls, 257 Pa. 547; Wilson v. Brown, 269 Pa. 225; Eckels v. Weibley, 232 Pa. 547; Edmunds v. Duff, 280 Pa. 355.

*John B. Hannum, Jr.,* of *Hannum, Hunter & Hannum,* with him *S. Edward Hannestad,* for appellee.— Apprehension of danger is not alone sufficient to call for equitable relief: Rhodes v. Dunbar, 57 Pa. 274; Manorville Boro. v. Flenner, 286 Pa. 103.

A review of the cases shows that when a person is engaged in carrying on a lawful business, he should not be absolutely prohibited from doing so unless it appears that the carrying on of such business will necessarily produce the injury complained of. If it can be conducted in such a way as not to constitute a nuisance, then it should be permitted to be continued in that manner.

If the complainant's right is doubtful, or the thing which it is sought to restrain is not a nuisance per se

and will not necessarily become a nuisance, but may or may not become such, depending upon the use, manner of operation, or other circumstances, equity will not interfere: Bell v. R. R., 25 Pa. 161; Rhodes v. Dunbar, 57 Pa. 274; Phila.'s App., 78 Pa. 33; Dilworth's App., 91 Pa. 247; Daw v. Powder Co., 160 Pa. 479; Shaw v. Transit Co., 4 Pa. C. C. 363; Gavigan v. Refining Co., 186 Pa. 604.

There is no property or population to be injured by appellee's oil tanks: Houghton v. Kendrick, 285 Pa. 223; Wier's App., 74 Pa. 230; Dilworth's App., 91 Pa. 247.

The mere depreciation in the value of adjoining property because of the alleged threatened nuisance is not of itself sufficient to justify an injunction: Houghton v. Kendrick, 285 Pa. 223, 228; Rhodes v. Dunbar, 57 Pa. 274; Shaw v. Transit Co., 4 Pa. C. C. R. 363.

That the proposed structure will increase the risk to the complainant from fire, and consequently raise his insurance rates, will not warrant a granting of an injunction: Rhodes v. Dunbar, 57 Pa. 274; Young v. Elkins, 15 Phila. 27; Shaw v. Transit Co., 4 Pa. C. C. R. 363.

OPINION BY MR. JUSTICE KEPHART, June 25, 1927:

The parties to this litigation own adjoining tracts of land in Delaware County; that of appellant, an 83 acre tract, is used as a farm and residence, while that of appellee, engaged in the business of refining petroleum oil, is a 23.67 acre tract on which large tanks for storage of oil have been erected. The nearest tank is at present 900 feet from plaintiff's land, but it is proposed by appellee to construct two tanks, one 83½ feet, the other 417 feet, from the boundary line. Each tank will store 75,000 gallons of oil or its by-products. A bill for an injunction was filed, averring that the construction and use of these tanks would constitute a menace to the safety and quiet enjoyment of the lands and home of appellant;

and that the effect of a fire that might easily ignite the liquid or cause an explosion would bring disaster to appellants for which there could be no adequate remedy at law. A demurrer was filed, which the court below sustained on the ground that appellant's complaint was based on a mere apprehension of danger without adequate foundation. This appeal follows.

The effect of the demurrer was to admit all the allegations of fact contained in the bill, and the inferences reasonably deducible therefrom: Kurtz v. R. R. Co., 187 Pa. 59; Pew v. Minor, 216 Pa. 343. The gravamen of appellant's bill lies in the charge that petroleum, or any of its by-products, is readily ignited from "a stroke of lightning, spark, flame, or the heat rays of the summer sun," and it is "susceptible" to such ignition; and that because of this, the tank containing petroleum would be "an ever present, threatening, dangerous menace to the land, property and estate of the plaintiff." Appellant does not aver that appellee's business is a nuisance, her prayer for an injunction proceeds on the theory that the proposed use of appellee's plant and equipment at this location becomes a nuisance to her as an adjoining landowner. It was, of course, necessary for her cause to show that the use is inherently dangerous to life and property at the particular place. The subject-matter of the claim is the power of the business to do harm. The subject-matter should speak danger, of itself, without intervening agency, unless the latter is reasonably certain, or, if it is not known as such dangerous agency and does not actually exist in fact, it should be so described that the result reasonably to be expected shows that danger; if this is done, the court may then open the door for hearing and proof.

An owner has a right, barring malice and negligence, to any use of his property, unless by its continuous use he prevents his neighbors from enjoying the use of their property to their damage. Such use may, under

given conditions, be enjoined. Equitable relief must be predicated on an injurious invasion of a fixed and determined property right. By injury is meant something affecting the capacity of the property for ordinary use or causing a discomfort in the enjoyment of it that threatens the health or welfare of the occupant, with resultant injury to the property. The damages must be of a substantial character: Price v. Grantz, 118 Pa. 402, 413. A mere diminution in value is not sufficient to justify a grant of equitable relief: Rhodes v. Dunbar, 57 Pa. 274. Where, however, a party is entitled to compensation at law, if the injury, actual or threatened, be of a continuous nature and remediable only by multiplicity of suits, or where the injury is irreparable by damages at law, equity will exercise its restraining power. This is the test of equity jurisdiction: Evans v. Fertilizing Co., 160 Pa. 209, 220.

As affecting personal discomfort solely, the relief must depend largely on the circumstances of the nuisance and the place where the things complained of occur. In this age, persons living in a community or neighborhood must subject their personal comfort to the commercial necessities of carrying on trade and business. Where the individual "is affected only in his tastes, his personal comfort, or pleasure, or preferences, these he must surrender for the comfort and preferences of the many" (Robb v. Carnegie, 145 Pa. 324, 340) ; but when the consequences of that trade or business not only effect discomfort to the body, but become a resultant injury to property, or vice versa, there is ground for equity interference: Evans v. Fertilizing Co., supra, p. 219.

One thing is quite certain, equity will not interfere unless its right to do so is free from doubt: Sparhawk v. The Union Passenger Ry. Co., 54 Pa. 401, 426. The wrong or injury resulting from the pursuit of a trade or business must be plainly manifest or certain to follow: Rhodes v. Dunbar, supra, p. 290; Wier's App., 74 Pa. 230. If the injury be doubtful, eventual, or contingent,

equity will not grant relief: Rhodes v. Dunbar, supra. The fact that it might possibly work injury is not sufficient.

The law has determined that some businesses are, under certain conditions, nuisances per se. A nuisance per se, as relating to private persons, is an act or use of property of a continuing nature offensive to and legally injurious to health and property, or both. A given condition may be, at all times and places, a nuisance per se. As related to business, its inherent qualities or elements must be such that it must reasonably follow, in a particular locality or surrounding, that there will be an injury to property or a discomfort to the individual, with a resulting injury to property. The difference between a business, which, no matter how it is conducted, is a nuisance per se as to certain location and surrounding, and a business which is being so conducted as to become a nuisance, lies in the proof, not in the remedy. In the former, the right to relief is established by averment and proof of the mere act; in the other, proof of the act and its consequences is necessary: Dennis v. Eckhardt, 2 Grant 390. A given business is in itself a nuisance per se when it is generally known to be injurious to health and to cause legal damage to property in certain localities and surroundings, regardless of how it may be carried on. "The common experience of mankind, of which the courts take judicial notice, has found, in certain localities and surroundings, certain pursuits to be universally injurious to health and damage to property, no matter how carefully conducted." Such pursuits are, in given places, nuisances per se. The following circumstances attending a business or property that give rise to a nuisance per se are, offensive or noxious odors or smells, undue noise of crowds, music, motors, gambling, improper construction of buildings, and the like, that are injurious to morals, life, health and property. As illustrating a business that is perfectly lawful, becoming unlawful and a nuisance per se as in a certain

locality, reference is made to those cases where it has been judicially determined that the business was unlawful near dwellings or in built up sections.

In Evans v. Fertilizing Co., supra, the manufacture of bone fertilizer near the home of a farmer was held to be a nuisance per se because noxious odors and offensive smells were inseparable from the manufacture. This circumstance was a fixed fact, the knowledge of it was common to everybody, the court could take judicial notice of it. The same was true of the use of property in a city as a livery stable (Houghton v. Kendrick, 285 Pa. 223) and a stockyard (Eckels v. Weibley, 232 Pa. 547) in a residential section; a public garage which is inseparable from the noise of pounding metals, noxious odors, racing motors, and other affecting causes (Phillips v. Donaldson, 269 Pa. 244; Hibberd v. Edwards, 235 Pa. 454; Prendergast v. Walls, 257 Pa. 547), a saw mill in the same character of district (Krocker v. Westmoreland Planing Mill Co., 274 Pa. 143), an amusement park near dwellings, with its unfailing accompaniment of crowds, music and noise until late at night, and other detractions (Edmunds v. Duff, 280 Pa. 355), as a powder mill (Wier's App., supra). All of these uses were held to possess inherent qualities which, as to a given locality, have been condemned by the courts as nuisances per se. In other words, though the business be lawful, as, for instance, a powder mill in an outlying district (Dilworth's App., 91 Pa. 247), it becomes unlawful because of location and surroundings.

In all these cases, it must be apparent that an injunction was not granted on the ground of anticipated danger or an apprehension of it, but, when the place and the act are admitted, it has been determined by the courts that certain unavoidable, inherent characteristics of the business injuriously affect health and property. In these cases, the averment of the act, or an attempt to perform it in a place forbidden, is all that is necessary.

Where the business is conducted so as to become a nuisance, a different rule prevails. The proof must show that it is conducted in such way as to become injurious. The injury arises from either an improper conduct of business or one that could be remedied. See, for illustration, Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, where smoke, dust, and refuse from a steel plant, destroyed property and became injurious to health.

The two tanks here were not built when this bill was presented; therefore, of course, they were not in operation. In considering the question in this case, we must determine from the disclosed uses to which the property is to be put in the place described, not only whether it possesses the power to do harm, but whether injury will necessarily result from the proposed use, or whether the use subjects the property to such contact with outside agencies that its probable result will be dangerous. Was the contact manifest or certain to follow?

The bill does not charge any such inherent characteristic or any such likelihood of danger. True, it does say that petroleum and its by-products are highly explosive, readily ignited, and susceptible to ignition from lightning, spark, flame, intense heat of the sun, or internal combustion. It does not charge that the natural, the probable result of the building with its contents will be an explosion or a fire. It does not charge that this would be a "plainly manifest" result from placing oil or its by-product in the tank. It does charge that, because it is readily ignited and because it is susceptible to ignition, the result of the use of the building under the circumstances would be a constant menace and danger. All of this is purely problematic or conjectural. Of course, petroleum and its by-products, under the circumstances here existing, are readily ignited, but will they be ignited? Is that likely? Does common experience show it? Is the manner of use as described such that the probabilities are that they will be? The words "readily" and "susceptible" are words of anticipation, apprehen-

sion or mere fear, or, as the authorities say, doubtful, eventual, or contingent. The statement that the use becomes a menace is but a conclusion based on these antecedent conjectures.

There is no allegation in the bill that the construction is improper, that the equipment is not of the ordinary and usual kind, or that the regulation of the plant and its supervision is not of the best; nor does the bill aver that there will be a failure to afford proper appliances in its conduct. The business is very generally carried on, and the same complaints as contained in this bill could be made against almost any business. Take, for illustration, gas containers or tanks, storage tanks for automobile use, automobiles, dynamite used in the conduct of business, paper companies using large quantities of paper, or hay in a field or a barn, all are readily ignited and susceptible to flame, sparks, lightning and combustion. To stamp them as nuisances per se without showing, not merely apprehension or anticipation, but that the reasonable and normal result of the use will be a fire and consequent destruction, would greatly widen the heretofore existing scope of equity jurisdiction and greatly hamper necessary business through groundless fears.

What we have said may be summarized briefly in this way: Where it is sought to enjoin an anticipated nuisance, it must be shown (a) that the proposed construction or the use to be made of property will be a nuisance per se, (b) or that, while it may not amount to a nuisance per se, under the circumstances of the case a nuisance must necessarily result from the contemplated act or thing. See 7 A. L. R. 749; 26 A. L. R. 937. The injury must be actually threatened, not merely anticipated; it must be practically certain, not merely probable. It must further be shown that the threatened injury will be an irreparable one which cannot be compensated by damages in an action at law. A mere de-

crease in the value of complainant's property is not alone sufficient: Rhodes v. Dunbar, 57 Pa. 274.

Thus far, we have discussed the question solely from the standpoint of plaintiff's bill and its averments. But there is another question related thereto. We have decided that gasoline in storage in built up sections is not only not a nuisance per se, but it is not dangerous as a fire hazard: Manorville Boro. v. Flenner, 286 Pa. 103. We said in Rhodes v. Dunbar, supra, that the apprehension of danger from fire was speculative and could not become the basis of equitable interference. In the case of Manorville Boro. v. Flenner, supra, p. 107, speaking through Mr. Justice SCHAFFER, we said, "The storage of gasoline in unlimited quantities in properly constructed and equipped tanks such as those erected in plaintiff borough is not dangerous to life or property, and it can be and is stored in large quantities in thickly populated districts without danger, that the storage of the amount of gasoline provided for in the tanks in question, 36,000 gallons, is not dangerous within itself, if properly regulated, and, when properly supervised, the use of such appliances for the storage of gasoline as have here been provided does not create a fire hazard to the traveling public or the inhabitants of plaintiff borough. Under these findings, it could not be determined otherwise than that the ordinance in question is unreasonable. It was conclusively shown that not the amount of gasoline stored, but the manner of its storage, determines the question of danger therefrom and that as here stored in modern scientifically constructed tanks it is not dangerous. That 'which is not an infringement upon the public safety and is not a nuisance, cannot be made one by legislative fiat and then prohibited': Bryan v. City of Chester, 212 Pa. 259, 262."

In the case before us, appellee has undertaken to safeguard the plant with all modern appliances, with fire ditches around it, to protect adjoining property, and, with the Manorville Case, appellant's problem becomes

more difficult. Plaintiff urgently insists that she should
be permitted a hearing and the court below should find
the facts. We do not agree with this conclusion. If
appellant should prove all the averments that are prov-
able as set out in her bill, with the inferences, deduc-
tions and conclusions therefrom, she would still not be
entitled to relief.

The decree of the court below is affirmed at the cost
of appellants.