## Allman et ux. v. Rexer

*Isaac Ash*, for plaintiffs.
*Wilhelm F. Knauer* and *Philip Atlee Sheaff*, for defendant.

McDEVITT, P. J., July 11, 1934.—Plaintiffs seek to restrain the defendant from maintaining bee hives on his property, 8062 Fairview Avenue, approximately 450 feet distant from plaintiffs' property at 8040 Rowland Avenue.

They seek this on the ground that the bees have interfered with their physical comfort and with their financial investment in the production of flowers of a particular variety for commercial purposes.

They seek the quiet and peaceable possession of their own property and the use to which it may best be put commercially, and for that purpose ask the court to restrain the use of defendant's property.

An owner of property has a right, however, to make such use of it as he may choose, unless his use of his property constitutes an injury to the rights of surrounding property owners: Pennsylvania Co., etc., v. Sun Co., 290 Pa. 404.

There is a dearth of authority on the question involved, even though at first glance it may seem a broad and general one. The distinction between nuisances per se and nuisances resulting from the manner in which the business is conducted lies in the proof required, not in the remedy: Pennsylvania Co., etc., v. Sun Co., supra.

The keeping of bees is not a nuisance per se: Arkadelphia v. Clark, 52 Ark. 23. The keeping of an unreasonable number of bees in an unreasonable place may be a nuisance: O'Gorman v. O'Gorman, 2 Ir. Rep. K. B. (1903) 573; but their mere existence does not make them such.

The expert testimony in this case was like that variety on most occasions—interesting and instructive, but not convincing.

There is no evidence, except a conclusion on the part of the plaintiffs, that the bees that damaged the flowers in their hot houses were the property of the defendant. There is, on the other hand, testimony on behalf of the defendant that bees are assembled in at least a half dozen places in the vicinage.

Plaintiffs seek to classify these as estrays. It takes a wider stretch of the imagination than the court can exercise to place these winged insects in a class with animals of husbandry. There is not only a distinction but a great difference in these classes.

No man has a right to expect his cattle to thrive upon or to injure the property of his neighbors, and naturally, when they do, damages automatically follow. Loss, inconvenience, and annoyance are distinguishable conditions, one being monetary and the other two mental.

The law divides the entire animal kingdom into two classes: First, those which are domesticated (feræ domitæ) and, second, those which are wild (feræ naturæ). The rights and liabilities of persons with reference to the animal kingdom are likewise divisible. Bees belong to the latter class, and in considering the law with reference to these cases rules pertaining or applicable to the former class would have no significance. Wild animals are also divisible into two classes: Those which are free to roam at will; and those which have been subjected to man's dominion. Rights and liabilities depend upon the class into which the animal falls at the particular time. If it be in a state of nature, free to roam at will, it is the property of no one and may become the property of the first taker.

So it may be understood that the animal kingdom to which bees belong is subject to a certain qualified proprietary interest. That is, they belong to no one, not even the owner of the soil on which their nest may be, unless they have been subjected to his dominion, and when so reduced to possession they become his property. This principle, however, is subject to an important modification—they remain the property of the possessor only so long as his dominion continues, and if such animals regain their freedom, as bees by swarming out and occupying some natural hive, as a hollow in a tree, the property right is lost, and they again revert to their natural state and become the property of the first taker.

It is conceivable that even pigeons, as was decided in a neighboring State, might become a nuisance. But the court would have to be convinced of their identity before placing the responsibility for their damage. Such members of the feathered kingdom are not only distinguishable by color, and frequently by markings, but by other signs.

Property in bees depends upon having reclaimed them or reduced them from a state of nature to possession. Blackstone says: "Bees also are *feræ naturæ;* but, when hived and reclaimed, a man may have a qualified property in them, by the law of nature, as well as by the civil law. And to the same purpose, not to say in the same words, with the civil law, speaks Bracton: 'occupation, that is, hiving or including them, gives the property in bees; for though a swarm lights upon my tree, I have no more property in them till I have hived them than I have in the birds which make their nests thereon, and therefore if another hives them, he shall be their proprietor: but a swarm which fly from and out of my hive, are mine so long as I can keep them in sight, and have power to pursue them; and in these circumstances no one else is entitled to take them. But it hath been also said, that with us the only ownership in bees is *ratione soli;* and the charter of the forest [9 Hen. III C. 13], which allows every freeman to be entitled to the honey found within his own woods, affords great countenance to this doctrine, that a qualified property may be had in bees, in consideration of the property of the soil whereon they are found.'

"In all these creatures, reclaimed from the wilderness of their nature, the property is not absolute, but defeasible; a property that may be destroyed if they resume their ancient wildness and are found at large."

Justinian says: "Bees also are wild by nature. Therefore bees that swarm upon your tree, until you have hived them, are no more considered to be your property than the birds which build their nests on your tree; so if any one hive them, he becomes their owner. Any one, too, is at liberty to take the honey combs the bees may have made. But of course, if, before anything has been taken, you see any one entering on your land, you have a right to prevent his entering. A swarm which has flown from your hive is still considered yours so long as it is in your sight and may easily be pursued; otherwise it becomes the property of the first person that takes it."

This doctrine appears to be universal, and is applied as well by the civil law which prevails on the Continent of Europe as by the common law, having its origin in the Roman law, as explained by Justinian.

Bees are like flies. There are varieties of both, but in the case at bar there are no distinguishable marks by which to identify them as the property of the defendant. And even if there were, it might be a serious question whether they are a nuisance, when their visits to plaintiffs' hothouses could easily be avoided by mechanical devices.

Plaintiffs not only seek to limit the activity of defendant's bees, noted in history, rhyme, and song for their industry, but seek to destroy them because of their financial investment.

Injuries must be such as interfere with the ordinary use of the complainants' property or which threaten the health or welfare of the occupant; a mere diminution in the value of the property will not afford ground for equitable relief.

It matters not in the eyes of the law that defendant enjoys a mere profit of $5 per hive per annum and that the plaintiffs have an investment representing upwards of $100,000. The legal rights of the defendant, even though his financial worth be insignificant, are equal to the legal rights of the plaintiffs.

The court is mindful of the holding of the Supreme Court in Nesbit et al. v. Riesenman et al., 298 Pa. 475: "The law has uniformly attached to the right of enjoying property a higher status than the right to use property in lawful acts which may injure the rights of others, so much so that the courts have held that the latter may, if it damages property or health, become a nuisance, and, if repeated with like effect, a nuisance per se"; but does not feel that this is relevant. The same court has said times without number that no one is entitled to absolute quiet in the enjoyment of his property. He may only insist upon a degree of quietude consistent with the standard of comfort prevailing in the locality in which he dwells: See Pennsylvania Co., etc., v. Sun Co., supra.

It has been argued that bees have a vicious nature. This brings in the question of negligence as well as nuisance. If negligence is sought to be based upon the fact that bees have a vicious nature, it will be necessary for the plaintiff to show that the particular bees were generally vicious and that notice of that fact had been brought home to the owner. The courts are not prepared to hold that bees are generally vicious and that their owners are charged with notice of that fact, but take the opposite view, that their natural propensities are not vicious, and require proof of viciousness and notice thereof to the owner in each case. In case of injury by bees, the plaintiff must show the bees to have been vicious, and in the habit of stinging persons and animals whenever opporunity offered; and further, that the owner had been informed of this propensity and had neglected to correct it or to remove the bees.

Since the owner of the bees has entire control of the location of their habitation, he is bound to exercise care in locating them so as not to cause injury to others. The maxim, so use your own as not to injure others (sic utere tuo ut

alienum non lædas) applies. It is negligence to locate the hives so near a place where persons or animals may be expected to be as to make it appear likely that the bees will be angered by their presence and attack them.

It is perfectly obvious that the keeping of bees, for instance, on a property contiguous to a public playground, or to a schoolhouse, or to a place of amusement, where the visitors, patrons, and employes would be subject to constant annoyance and inconvenience, would be a nuisance. But none of those conditions exists in the case at bar.

The use of property for some businesses, in certain localities, constitutes a nuisance per se where the carrying on of the business inevitably results in damage to property and injury to health of the owners or occupants, no matter how carefully it is conducted: Pennsylvania Co., etc., v. Sun Co., supra.

The defendant is just as much entitled to quiet and peaceable possession, and a proper use of his property, as the plaintiffs, and the plaintiffs' rights rise no higher than the defendant's, when he enjoys all the peace, quiet, and convenience that the law guarantees for him.

It was testified that hothouses in districts infested with the nefarious and destructive Japanese beetle were required to be screened in order that the products might be shipped without including the insect pest, and there is no proof that such preventive measures would entail a prohibitive cost.

In the case of Arkadelphia v. Clark, 52 Ark. 23, the court said: "Neither the keeping, owning, or raising of bees is, in itself, a nuisance. Bees may become a nuisance in a city, but whether they are so or not is a question to be judicially determined in each case."

This sums up, in a few lines, the entire situation.

The court, on the proofs, is unable to declare the bees of defendant a nuisance or to find negligence in their maintenance, and cannot restrain their location under existing conditions. Plaintiffs' bill in equity is therefore dismissed. Plaintiffs to pay the costs.