## Houghton et al., Appellants, *v.* Kendrick et al.

*Equity—Findings of fact—Evidence—Appeals.*

1. The findings of a chancellor, who saw and heard the witnesses, will, if approved by the court below, be given the same weight as the verdict of a jury, and will not be disturbed on appeal, if there was substantial evidence to support them.

*Equity—Nuisance—Municipal structures—Stable—Injunction.*

2. The mere fact of annoyance to one residing in a city, will not establish the existence of a nuisance; he must bear with the inconvenience growing out of his residence there, just as he enjoys the benefits flowing from it.

3. A municipality should, if possible, so locate the structures used by it as to enable its work to be done efficiently and economically; and it may do this, if it acts with due regard to the rights of those living in the vicinity, even though the use of the structures may cause some annoyance to such people.

4. A stable is not a nuisance per se, but it must be so used as not to create a nuisance.

Argued December 2, 1925. Appeal, No. 402, Jan. T., 1925, by plaintiffs, from decree of C. P. No. 1, Phila. Co., Dec. T., 1922, No. 8215, on bill in equity, in case of William L. Houghton et al. v. W. Freeland Kendrick et al., and the City of Philadelphia. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction. Before BARTLETT, P. J.

The opinion of the Supreme Court states the facts.

Decree for plaintiffs, enjoining certain things but not declaring the stable a nuisance generally. Plaintiffs appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Michael J. O'Callaghan,* for appellants.—A permanent injunction should have been granted preventing defendants from operating the stable on the facts found by the chancellor: Krocker v. Mill Co., 274 Pa. 143; Fidelity T. & T. Co. v. Hays, 281 Pa. 461; Edmunds v. Duff, 280 Pa. 355.

The equitable rule that the chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing and leaving the party to his redress at the hands of a court of law, has no application to the instant case.

*James Francis Ryan,* Assistant City Solicitor, with him *Joseph P. Gaffney,* City Solicitor, for appellees.— The granting of an injunction restraining certain acts found to be harmful is sufficient under the findings made by the chancellor: Atlas Portland Cement Co. v. Am. B. & C. Co., 280 Pa. 449.

The granting of the injunction prayed for would do great public harm: Heilman v. Ry., 175 Pa. 188.

OPINION BY MR. JUSTICE SIMPSON, January 4, 1926:

From a decree in their favor, requiring defendants to make certain changes, as a condition to the city's further continuing the use of one of its buildings as a stable for horses and a storage yard for vehicles, plaintiffs appeal because such use was not wholly enjoined.

By section 5 of article XX of the First Class City Charter Act of June 25, 1919, P. L. 581, 625, it is provided that "After the 31st day of December, 1920,......the collection of ashes, waste, rubbish and garbage, ......shall be done directly by the city," with an alter-

native provision (which has not been considered a desirable one to adopt), that, under certain conditions, the work might be done by contract.  Subsequent to the passage of this statute, and after a careful investigation regarding the various sites obtainable, the city officials decided that a plot of ground, part of an abandoned and condemned cemetery, was the best location, in one of the city districts, for the purpose of erecting a building, to be used in connection with the gathering of ashes, waste and rubbish, and that this property was, moreover, so situated that its use, for the purposes stated, would relatively cause but little annoyance to persons living in that section of the city.

Before the building was erected, a bill in equity was filed to prevent its construction, but was dismissed as premature.  Shortly after it was completed and put in operation, the present bill was filed, praying that its use, as a stable and storage yard, might be wholly enjoined.  After a full hearing, the chancellor decreed that both the toilet and the blacksmith shop should be removed from their then locations in the building; that all manure should be removed directly from the interior of the building, and not allowed to even temporarily accumulate in the stable yard; that the stable itself should "be thoroughly screened, cleaned and fumigated so that no stench or odor shall issue therefrom to the annoyance, inconvenience and disturbance of the peace of the neighborhood"; and that defendants should see that the city's employees did not "engage in loud talking, using profane, scurrilous and obscene language, and otherwise disturbing the peace and quiet of the neighborhood"; but he refused to find the stable would be a nuisance, however used, or that plaintiffs had any other just complaint as to the manner of using it.  They thereupon prosecuted this appeal.

The evidence taken at the trial shows, as is usual in this class of cases, a wide difference of opinion regarding the facts, thus making the case one peculiarly appropri-

ate for the application of the rule that the findings of a chancellor, who saw and heard the witnesses, will, if approved by the court below, be given the same weight as the verdict of a jury, and will not be disturbed on appeal, if there was substantial evidence to support them: Bangor Silk Knitting Co. v. Wise, 277 Pa. 415. In the instant case, there was much testimony on each side of every issue of fact, including those found in favor of plaintiffs as well as those supporting defendants; hence, in conformity with the rule stated, we must accept *all* the findings as correct.

Any other use of a property than for residential purposes, may be, and at times is, an annoyance to dwellers in the vicinity, and doubtless these appellants find the city's stable to be so. But the mere fact of annoyance does not establish the existence of a nuisance, and hence, standing alone, it will not be a sufficient basis for an injunction against the particular use from which the alleged annoyance arises. He who lives in a city must bear with the inconveniences growing out of his location there, just as he enjoys the benefits flowing from it. Under proper conditions, the neighbors of an urban dweller are entitled to have horses and automobiles, and to house them in stables and garages on their own properties. The municipality, in the performance of the duties put upon it by statute, must have buildings for fire and police stations; garages or stables, depending on the character of locomotion used; and such other structures as are necessary to the carrying on of its work; and all such should be so located that, with due regard to the rights of the adjoining inhabitants, the city's work may be done efficiently and economically. While those who prefer a quiet life would rather not live in close proximity to such places, the fact of their existence, and the unpleasant noises and disturbances sometimes arising from their use, will not alone justify a chancellor in ordering their removal. In police stations, where criminals, insane and weak-minded persons must

be brought, there will, at times, be disturbances, owing to the behavior of such people; in fire-engine houses, the frequent ringing of the bell, which gives notice of the fact and location of fires and the clanging of the gong, which gives warning of the oncoming rush of the engine into and along the streets, naturally startle and alarm the inhabitants; and the noises incident to the entrance and exit of autotrucks or horse-driven vehicles (this latter being one of the principal complaints of appellants here), necessarily cause some annoyance to those living near by, who, from such facts, readily convince themselves that the place from which the annoyance comes is a nuisance per se. On the other hand, the chancellor, who must consider the rights of all, not infrequently finds, as he does here, that regulating the use, and not forbidding it, is the proper remedy for whatever really is a nuisance.

In his adjudication, the chancellor finds that the neighborhood, in which the stable is situated, is a residential one, and this finding, under the rule stated, must be accepted as correct,—although an inspection of the vicinity indicates that, while there are residential areas existing at some distance off in all directions, this portion of the city is not now and never has been a part of them. The property on which the stable is located, is bounded on the northeast by the rear of houses, built over a generation ago and now owned or occupied by many of the complainants; on the northwest by the right-of-way of the New York Division of the Pennsylvania Railroad Company, over the tracks of which 388 steam trains and 79 electric trains travel each day; on the southwest by a portion of the neglected and condemned Glenwood cemetery; and on the southeast by Glenwood Avenue, immediately across which, and extending for more than a city block, is another portion of the same cemetery. The inspection also made clear that the immediate vicinity is not an improving one; a conclusion emphasized by one of the plaintiffs, who testified that, during

"the last fifteen years [which long antedates the erection of the stable], there has not been a new house built in that neighborhood." These things demonstrate that the court below could not properly have held, as matters of fact (which appellants asked it to do), that the character of the vicinity was such as to make the location an ill-chosen one, and the stable a nuisance, because of its situation.

Nor is their contention that it should be so held as a matter of law, any more sustainable. "Stables are not nuisances per se,—whether maintained for private purposes or as livery stables,—though they may become so as a matter of fact. The surrounding facts and circumstances are to be taken into consideration in every case. ......A stable, to be a nuisance, must materially interfere with another in the enjoyment of his property. It is not sufficient that it inconveniences him, or that it to some extent depreciates the value of his property...... In the determination of the question of nuisance vel non, location and surroundings are of the first importance. But it cannot be said, as a matter of law, that a stable cannot be kept in the residence portion of a large city in such a manner that it will not be regarded as a nuisance": 20 R. C. L. 414-15. This is in accord with our opinion in Rodenhausen v. Craven, 141 Pa. 546, and no later authority overrules or qualifies the conclusion there reached. The court below applied to the instant case the principles there stated and must be sustained in so doing.

The decree of the court below is affirmed and the appeal dismissed at the cost of appellants.