## Miller et al. v. Silk Service Stations et al.

*Equity—Nuisance—Gasoline tanks—Injunction.*

1. The storage of gasoline in automobile tanks in a borough or city is not a nuisance *per se.*

2. Where a person has received a permit from the Bureau of Fire Protection to construct a gasoline tank in a borough under proper conditions, he will not be enjoined from such construction on a bill filed by nearby residents where the evidence shows that the actual injury to such owners is contingent and extremely doubtful and that the only injury will be a depreciation of the value of their property.

3. Mere depreciation in the value of property in such case is not enough to authorize a court of equity to act by injunction, and especially is this the case where the plant is not even constructed or in operation, but merely started.

Bill for injunction. C. P. Beaver Co., Sept. T., 1927, No. 5, in Equity.

*John A. Elliott,* for plaintiffs; *A. G. Helbling,* for defendants.

McCONNEL, J., Aug. 5, 1927.—In this case, the plaintiffs, A. S. Miller and others, who are residents of the Borough of Beaver Falls, filed a bill in equity against the Silk Service Stations, Frank G. Garvin, proprietor, and Frank G. Garvin, on July 25, 1927, praying for a preliminary injunction, to be made permanent upon final hearing, to restrain the defendants from erecting and maintaining above ground upon certain premises in the Borough of Beaver Falls tanks for the storage of gasoline. A preliminary injunction was issued and a hearing fixed for Aug. 2, 1927, with the consent of all parties in interest. The hearing was held on Aug. 2, 1927, and testimony presented on the part of both plaintiffs and defendants; and the question is whether, under

the evidence produced upon said hearing, the preliminary injunction should be continued or dissolved.

The evidence showed that the defendant has leased from the Pittsburgh & Lake Erie Railroad Company a small tract of land in the Borough of Beaver Falls, bounded on the northeast by the right of way of Pittsburgh & Lake Erie Railroad Company; on the southeast by Fifth Avenue; on the southwest by Twenty-first Street, and on the northwest by a considerable tract of vacant land owned by the Pittsburgh & Lake Erie Railroad Company. Upon the tract of land so leased, the defendant intends to erect three steel storage tanks having a capacity each of about 10,000 gallons of gasoline; also a pumping station for the purpose of unloading the gasoline from the tank-cars; and intends to load tank-trucks with gasoline from the tanks, running it into the trucks by gravity.

The nearest tank to be constructed by the defendant to any public highway is 40 feet from the northern line of Twenty-first Street, which is a public highway in the Borough of Beaver Falls. The nearest dwelling-house to the tanks is one erected on the south side of Twenty-first Street, near the corner of Fifth Avenue, which is also a public highway in said borough; and this dwelling-house is located 100 feet from the nearest tank. There is another house on the northern side of Twenty-first Street, 143 feet from the nearest tank, and various dwellings on the western side of a 20-foot alley (which is called Thomas Alley, according to the evidence), and the nearest of these houses to the said tanks is 132 feet.

The district in which the tanks are to be erected and this station maintained is exclusively a residence district in the Borough of Beaver Falls, and it is alleged by the plaintiffs that the operation of this gasoline station at this place will greatly endanger the lives and property of the petitioners and others residing in proximity to said tanks, and that the maintenance of the same will be a common nuisance because of the annoyance and distress to the plaintiffs and those residing in the immediate neighborhood of this location, and that it will ruin the said district for residence purposes and materially depreciate the value of the plaintiffs' properties.

The evidence as introduced by the plaintiffs showed that their properties would be considerably depreciated in value through the location of these storage tanks as proposed on account of the fear which persons would naturally have of explosion and fire which might arise from the storage and handling of gasoline at this place by the defendant, although this fact was denied by the defendants' witnesses. The evidence also showed that an application had been made by the defendant to the Bureau of Fire Protection, Pennsylvania State Police, at Harrisburg, for the approval of this location for the storage and handling of volatile inflammable liquids, and, after a hearing was had before the State Fire Marshal, a permit, No. 31774, was granted to the defendant, allowing the construction above ground of three 10,000 gallons capacity tanks and one Viking twin rotary blind pump, or drawing-off device, at Twenty-first Street and Fifth Avenue, Beaver Falls, Beaver County, Pennsylvania, upon certain conditions enumerated in the permit as follows:

"(a) That the tanks be located at least 30 feet farther north and 10 feet east of the position as now shown on plan.

"(b) That unless the contour of the ground will prevail as a natural barricade against the spread of liquid, that suitable retaining wall or embankment be provided and maintained around the tanks to safely hold not less than 1½ times the capacity of the three tanks.

"*(c)* That all grass, weeds and vegetable growth on the property be cut down and so maintained.

"*(d)* That tanks be electrically grounded in approved manner.

"*(e)* That no less than three 2½ gallons capacity chemical fire extinguishers, suitable for oil fires, be provided on the premises.

"*(f)* That entire property under lease be surrounded with wire mesh or equivalent fence or enclosure to prevent access thereto by unauthorized persons.

"*(g)* That approval is provisional that no buildings or structures, other than tanks and pump-house now proposed, be erected on the property leased, nor on adjoining property within 60 feet of the tanks."

These conditions, as prescribed by the Bureau of Fire Protection, will have to be complied with, of course, by the defendant; otherwise the plaintiffs can at any time, upon complaint to the State Fire Marshal, prevent the maintenance and operation of the defendant's station at this location.

There was no evidence introduced at the time of the hearing in this case which would show that there is any real danger arising to any of the properties of the plaintiffs by reason of the maintenance and operation of this plant; but there is a natural feeling of apprehension of danger which makes this plant obnoxious to the plaintiffs and would naturally deter any person from wanting to purchase property or hold property in this vicinity, and we have every sympathy with the plaintiffs in this case. But the rights of an owner of property to the use, improvement and development of it cannot be interfered with unless the owner is doing something unlawful thereon or which will unlawfully do injury to the property of some other person. This feeling and principle is exceedingly well-expressed by Judge Ferguson in the case of Braun et al. *v.* Atlantic Refining Co., 27 Dist. R. 451, as follows:

"In this case, we have presented the familiar problem of apprehension among real estate owners and occupiers over the proposed use of neighboring real estate. When it is intended to erect a new structure in the vicinity of private residences, unless the newcomer acts in accordance with the wishes of the neighbors, the interposition of a court of equity seems at once to be required. Few persons have escaped annoyance of this kind. Owners of residences erect private garages in the rear or at the side of their properties which are more or less offensive to adjoining owners. Others, in residential sections, ignore building lines mutually and tacitly agreed upon, but not obligatory, or establish levels and grade lines differing from those adopted by others. Architectural eccentricities often offend, and frequently there is introduced into a residential neighborhood buildings to be used for commercial purposes. These changes, when they occur, are exceedingly offensive and annoying, but it is usually conceded that, if protest fails, the right and privilege of the owner to do what he will with his own property cannot be molested. In the case at bar, the trial judge has full appreciation of the mental attitude of the plaintiffs and understands their fears.

"Certain fundamental principles are involved, however, which must not be lost sight of. A man has the right to erect any sort of structure on his land and to use it for any lawful purpose, even though his act in a measure changes the character of the neighborhood. Unless there is a restriction binding the land, there can be no question of this right. If the use of the structure, however, should create a nuisance, the aid of the court may be invoked to abate it. In the determination of that question, the character of the neighborhood is an important element for consideration. If the use is not a nuisance, the courts cannot interfere.

Miller et al. *v.* Silk Service Stations et al.

"With these considerations in mind, a chancellor, when asked in advance to prohibit the use of land for a certain purpose, has before him just one question to be answered: Will the use proposed, with certainty, constitute a nuisance? He is not to interfere because he thinks a nuisance might result. If there is doubt in his mind, the matter must be left for the future to demonstrate as a matter of fact. He may not regard apprehensions unless those apprehensions are well grounded and founded on experience.

"When it is alleged that a nuisance exists, the burden rests on him who makes the allegation to prove it. . . ."

The plaintiffs ask us to issue an injunction to restrain the defendant from using his property for a purpose which is legal and which he deems is advisable and within his rights. While we think that this plant ought not to be located in this neighborhood, still we must comply with the law and allow him whatever rights he has secured or is entitled to by reason of his acquiring the property upon which the plant is to be located. And the question is whether, under the circumstances of this case, we can issue an injunction against the defendant.

There are many useful employments which must be pursued in and near towns and cities which may produce some discomfort, and even some injury, to those nearby; but it does not follow that a chancellor has the right to enjoin the carrying on of such businesses; and to entitle a plaintiff to an injunction, he must make out a plain case of injury and damage. See Huckenstein's Appeal, 70 Pa. 102, which was a bill in equity to restrain the operation of a brickworks in Allegheny County, it being alleged that the operation of the works was injurious to vegetation on the land of plaintiff and that it would destroy his vineyard and orchard, plants, trees and shrubbery, would render the land unhealthy and unfit for his residence and depreciate the value of his land, and that plaintiff would lose all of the improvements he had made thereon, and in that case an injunction was refused, the court saying: "If the injury be doubtful, eventual or contingent, equity will not interfere by injunction."

In the present case, while there is evidence that the value of the plaintiffs' real estate will be decreased, that is really only a sentimental matter, and the actual injury or damage which the plaintiffs suffer is contingent and extremely doubtful.

In the case of Sparhawk *v.* Union Passenger Ry. Co., 54 Pa. 401, which was an application for an injunction to restrain the operation of a street-railway company on Sunday, Mr. Justice Thompson, in delivering the opinion of the court, said, *inter alia:* "Injury to property, with reference to its reasonable and ordinary use, by continuous hurtful acts, constitutes a nuisance, undoubtedly, and may properly be the subject of equity jurisdiction, not only to redress the injured party by restraining the injurious acts, but, in some cases, by compelling the wrongdoer to make amends for the injury done. In such a case, the applicant for redress by injunction must establish a clear case of 'irreparable injury' likely to ensue as the consequence of the continuance of such acts."

There is no evidence in this case of any irreparable injury to the land of the plaintiffs, but merely evidence that the location and operation of this station will depreciate the value of their property. There are many buildings which can be constructed and many businesses carried on close to a person's property—for instance, a livery stable may be located on adjoining property—which may considerably depreciate the value of adjoining real estate; or certain tenants may be installed in a building which will have the same effect;

or the character of the building constructed may be such as to seriously depreciate the value of adjoining properties. But that is not enough to authorize a court in equity to grant relief. In the case of Houghton et al. *v.* Kendrick et al., 285 Pa. 223, complaint was made about the construction and operation of a stable in a residential district in the City of Philadelphia, and Mr. Justice Simpson, in delivering the opinion of the court, well stated the law with regard to such construction, as follows: "A stable, to be a nuisance, must materially interfere with another in the enjoyment of his property. It is not sufficient that it inconveniences him or that it, to some extent, depreciates the value of his property. . . . In the determination of the question of nuisance *vel non*, location and surroundings are of the first importance. But it cannot be said, as a matter of law, that a stable cannot be kept in the residence portion of a large city in such a manner that it will not be regarded as a nuisance: 20 Ruling Case Law, 414-15."

Mere depreciation in the value of property, therefore, is not enough to authorize a court of equity to act by injunction, and especially in a case of this kind where the plant is not even constructed and in operation, but merely started. If, after this plant has been constructed, it turns out that it is an actual nuisance to the owners of adjoining property, then the maintenance and operation of it under such circumstances could be, and would be, restrained by the court; but it must be shown that it is an actual nuisance and an actual injury and damage to the owners of the adjoining properties.

The storage of gasoline in suitable tanks is not a nuisance *per se*. See 29 Cyc., 1177, § 8; Whittemore *v.* Baxter Laundry Co., 52 L. R. A. (N. S.) 930, which is a case in the Supreme Court of Michigan, wherein the court said: "We may grant that the storage of gasoline on premises adjacent to or adjoining the premises of another is not a private nuisance *per se*. It might, however, become such, considering the locality, the quantity and the surrounding circumstances, and would not necessarily depend upon the degree of care used in its storage: Heeg *v.* Licht, *supra;* 29 Cyc., 1177."

And we can find no cases in Pennsylvania which hold that the maintenance and operation of such a storage station as is contemplated by the defendant in this case is a nuisance *per se* or that it can be restrained or prevented by injunction. The latest case which has been decided in the Supreme Court of this State is The Penna. Co. for Ins. on Lives and Granting Annuities, Trustee, *v.* Sun Co., No. 110, Jan. Term, 1927, opinion by Judge Kephart. The syllabus of this case is given in 9 D. & C., Advance Reports for July 12, 1927 [290 Pa. 404], as follows: "Equity will not enjoin the construction, over 80 feet from the boundary line of plaintiff's residential property, of 75,000-gallon tanks for the storage of oil or its by-products, unless actual danger of an irreparable injury to plaintiff's property is alleged and proved."

This decision, we take it, is binding upon this court, as the plaintiffs' property in this case is 100 feet from the nearest tank, and in the case last referred to, decided by the Supreme Court, it was only 80 feet from a 75,000-gallon tank. This decision of the Supreme Court is also in line with the case of Manorville Borough *v.* Flenner, 87 Pa. Superior Ct. 84, and affirmed by the Supreme Court in 286 Pa. 103, where the Supreme Court affirmed the finding of the court below that storage of gasoline in unlimited quantities in properly-constructed and equipped tanks in a borough is not dangerous to life or property, and that it can be and is stored in large quantities in thickly-populated districts without danger, and that the storage of 36,000 gallons of gasoline does not create a fire hazard to the traveling public or to the inhab-

itants of the plaintiff borough, and that if the gasoline is stored in modern, scientifically-constructed tanks, it is not dangerous.

In view of these decisions of the Supreme Court of this State, we cannot see, under the evidence in this case, how we can restrain the defendant from constructing and operating upon the property in question the plant which he has started to construct; and we are not satisfied that any damage will be sustained by the plaintiffs or the public through the operation of the plant in question. The evidence showed that the same kind of a plant has been in operation for a number of years in a thickly-settled residential district of the Borough of Ambridge without any danger or inconvenience to the adjoining property owners; and the court has knowledge of a plant of the same character which has been constructed and in operation for a number of years by the Gulf Refining Company on and near Fifth Street, in the Borough of Beaver, without any inconvenience or damage, so far as we know, to any of the adjoining property owners.

*Order.*—Now, Aug. 5, 1927, the preliminary injunction issued in this case is dissolved.