J-A14035-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES UMPHRED AND CYNTHIA KENNELLY, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| VP AUTO SALES & SALVAGE, INC. & JOSEPH RUSSELL D/B/A RUSSELL HAULING & RUSSELL HAULING, INC., | : | |
| | : | |
| Appellants | : | No. 1372 MDA 2014 |

Appeal from the Order Entered August 5, 2014,
in the Court of Common Pleas of Luzerne County,
Civil Division at No(s): 6062 of 2014

BEFORE:  BENDER, P.J.E., JENKINS and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:　　　　　　**FILED JUNE 24, 2015**

VP Auto Sales & Salvage, Inc., (VP) Joseph Russell d/b/a Russell Hauling, and Russell Hauling, Inc. (Russell) (collectively Appellants) appeal from an order which granted a petition for a preliminary injunction filed by Charles Umphred and Cynthia Kennelly (collectively Appellees).[1]  We affirm.

Given the manner in which we dispose of this appeal, we will provide only a brief summary of the background underlying the matter.  Russell leased property from VP where Russell operated a scrap metal recycling facility.  The scrap metal recycling operation was located near Appellees' home.

---

[1] An order granting a preliminary injunction is immediately appealable pursuant to Pa.R.A.P. 311(a)(4).

* Retired Senior Judge assigned to the Superior Court.

Appellees filed a complaint against Appellants. The complaint contains three counts: trespass, private nuisance, and public nuisance. The same day that Appellees filed their complaint, they filed a petition for a preliminary injunction. Therein, Appellees sought an order enjoining Appellants from operating the scrap metal recycling operation.

Appellants filed an answer to the petition for a preliminary injunction. The answer included new matter wherein Appellants asked the court to dismiss Appellees' complaint and petition for a preliminary injunction. According to Appellants, such action was necessary because Appellees failed to comply with 53 P.S. § 10617.[2]

---

[2] Section 10617 provides as follows:

> In case any building, structure, landscaping or land is, or is proposed to be, erected, constructed, reconstructed, altered, converted, maintained or used in violation of any ordinance enacted under this act or prior enabling laws, the governing body or, with the approval of the governing body, an officer of the municipality, or any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation. When any such action is instituted by a landowner or tenant, notice of that action shall be served upon the municipality at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the municipality. No such action may be maintained until such notice has been given.

53 P.S. § 10617.

The trial court held several days of hearings regarding Appellees' petition for a preliminary injunction. At the beginning of those hearings, the court refused Appellants' request to dismiss Appellees' complaint and petition for preliminary injunction based upon the allegation that Appellees failed to comply with 53 P.S. § 10617. The trial court ultimately granted the petition for a preliminary injunction on August 5, 2014. Appellants timely filed a notice of appeal.

The trial court directed Appellants to comply with Pa.R.A.P. 1925(b). Appellants subsequently filed a 1925(b) statement, and the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a). In their brief to this Court, Appellants ask us to consider the following questions.

> 1. Whether the trial court committed an error of law in denying [A]ppellants' motion to dismiss based upon [A]ppellees' non-compliance with 53 P.S. § 10617?
>
> 2. Whether the trial court committed an error of law or abused its discretion when it accepted John Ferdinand as an expert witness?
>
> 3. Whether the trial court committed an error of law or abused its discretion when it received into evidence and considered (a) Russell's previous operations at 12 Apollo Drive in 2012; (b) Judge Vough's Order dated August 5, 2013 granting an injunction filed to Civil Action 8151 of 2013; (c) the notes of testimony of the Luzerne County Zoning Hearing Board filed in the Court of Common Pleas of Luzerne County to Civil Action No. 16373 of 2012; and (d) the findings of fact and conclusions of law of the Luzerne County Zoning Hearing Board where the parties and issues were dissimilar to the instant case?[3]

---

[3] The notes of testimony indicate that the trial court admitted into evidence the various items to which Appellants refer in this issue. However,

4.    Whether the trial court committed an error of law or abused its discretion in granting a preliminary injunction where [A]ppellees failed to prove the existence of a private or public nuisance?

5.    Whether the trial court had no apparent reasonable grounds in granting the preliminary injunction where none of the essential prerequisites for a preliminary injunction were [*sic*] satisfied?

6.    Whether the trial court ignored well-settled legal principles set down by the Pennsylvania Supreme Court in noise and vibration cases?

Appellants' Brief at 5-6 (trial court's answers omitted).

With the pertinent standards of review in mind, we have reviewed the

certified record and the parties' briefs.[4]   Appellants have failed to convince

---

Appellants failed to ensure that the items were included in the certified record. **See Commonwealth v. Bongiorno**, 905 A.2d 998, 1000 (Pa. Super. 2006) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty.").

[4] Appellants' first and last issues present questions of law.  "In reviewing questions of law, our standard of review is *de novo* and our scope of review, to the extent necessary to resolve this legal question, is plenary." **Egan v. USI Mid-Atlantic, Inc.**, 92 A.3d 1, 10 (Pa. Super. 2014).  As to Appellants' second issue, we review a trial court's decision regarding whether a witness is qualified to give expert testimony for an abuse of discretion. **Vicari v. Spiegel**, 936 A.2d 503, 512-13 (Pa. Super. 2007).  Concerning Appellants' third issue, "we review the trial court's determinations regarding the admissibility of evidence for an abuse of discretion." **American Future Systems, Inc. v. BBB**, 872 A.2d 1202, 1212 (Pa. Super. 2005). Appellants' fourth and fifth issues question whether the trial court erred by granting the preliminary injunction.

When reviewing an order granting a preliminary injunction, we do not inquire into the merits of the underlying action.  We may examine the record only to determine whether the trial

us that the trial court erred. Moreover, a review of the trial court's opinion reveals that the opinion adequately addresses and properly rejects the issues Appellants raise on appeal. We therefore adopt that opinion in affirming the trial court's order. Trial Court Opinion, 10/27/2914. The parties shall attach a copy of the trial court's October 27, 2014 opinion to this memorandum in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2015

---

court had reasonable grounds for its order. Our scope of review is particularly limited where, as here, the injunction is merely prohibitive rather than mandatory. We may reverse only if there are no grounds to support the decree or if the rule of law was palpably erroneous or misapplied.

***Chmura v. Deegan***, 581 A.2d 592, 593 (Pa. Super. 1990) (citations omitted).

- 5 -

CHARLES UMPHRED and : IN THE COURT OF COMMON PLEAS
CYNTHIA KENNELLY, : OF LUZERNE COUNTY

    Plaintiffs :

    vs. : CIVIL ACTION

VP AUTO SALES & SALVAGE, INC. :
and JOSEPH RUSSELL d/b/a :
(i) RUSSELL HAULING and :
(ii) RUSSELL HAULING, INC. :
    Defendants :

: NO. 6062 OF 2014

## OPINION

Plaintiffs Charles Umphred and Cynthia Kennelly are homeowners seeking a preliminary injunction arguing that Defendant Joseph Russell d/b/a/ Russell Hauling and Russell Hauling, Inc., ("Russell") should be enjoined from operating his scrap yard and metal recycling facility on an adjoining piece of property. After finding that Russell's business operation constituted a nuisance and that all of the necessary prerequisites for a preliminary injunction were satisfied, this Court granted the preliminary injunction.

## I. Facts and Procedural History

Plaintiffs own a home located at 27 Ferretti Drive, which is zoned R-1, residential, in West Wyoming. Russell operated Russell Hauling, a scrap metal recycling facility, at 45 Apollo Drive, which is zoned M-3, heavy industrial. Russell leased the property from Defendant VP Auto Sales & Salvage ("VP"), a Pennsylvania corporation solely owned by John Pisaneschi. Beginning in 1977, VP operated an auto salvage business from the property at 45 Apollo Drive. For over thirty years, VP operated that business at 45 Apollo Drive in the Borough of West Wyoming without complaint from any of the surrounding residents. Approximately two or three years prior to leasing the property to Russell, VP ceased operating the auto salvage business at 45 Apollo Drive.

Although the subject property of the injunction is 45 Apollo Drive, events involving the prior location of Russell's business at 12 Apollo Drive are inextricably

1

intertwined with, and are relevant to a thorough analysis of, the instant matter. From approximately March of 2012 through August of 2013, and immediately prior to starting business at 45 Apollo Drive, Russell operated his scrap metal recycling facility from 12 Apollo Drive, a plot of land immediately adjacent to the northeast boundary line of 45 Apollo Drive. Plaintiffs' home is located approximately 200 feet northwest of 12 Apollo Drive and their property line is approximately about 30-45 feet from 45 Apollo Drive. N.T. 7/29/14; 163, 22-25; 164, 1-6.

Russell began his scrap metal recycling activities at 12 Apollo Drive without obtaining either a special exception from the Luzerne County Zoning Hearing Board or obtaining a junkyard license from the Borough of West Wyoming. Russell's subsequent application for a special exception to engage in scrap metal and recycling activities at 12 Apollo Drive was denied by the Luzerne County Zoning Hearing Board. *See* Plaintiff's Exhibit 8. At the October 2, 2012 hearing before the Zoning Hearing Board, Plaintiffs appeared with several other neighborhood residents in opposition to Russell's application for a special exception and testified that the noises involved in the scrap metal recycling operations were so continuous and disturbing as to interfere with the quiet enjoyment of their properties. The Hearing Board determined that Russell's scrap metal and recycling constituted a "nuisance" to residential neighbors, and that "no reasonable safeguards or conditions" could be put in place to reduce the "noise pollution" to the lowest level economically feasible. Id. Russell appealed the denial to the Luzerne County Court of Common Pleas Civil Action 2012-16373 and Plaintiffs intervened. No further action has been taken on that appeal.

On July 23, 2013, the Borough of West Wyoming filed a Petition for Special Injunction against Russell to enjoin him from operating the scrap metal recycling business at 12 Apollo Drive.[1] Judge Michael T. Vough issued a Preliminary Injunction on August 5, 2013, ordering that Russell "cease and desist all operations and [be] hereby prohibited from operating the business located at 12 Apollo Drive." *See* Plaintiff's Exhibit 9. On September 5, 2013, West Wyoming Borough filed a motion requesting

---

[1] The Petition for Special Injunction, filed to *West Wyoming Borough v. Russell*, Luzerne County Civil Action 8151-2013, requested an injunction against Defendant Russell individually and Joseph Russell t/d/b/a/ Russell's Hauling, Russell's Hauling Inc. and Russell's Hauling Company.

2

sanctions against Russell for failure to comply with the injunction because Russell continued to operate his business in violation of the injunction.

After the sanctions hearing was scheduled, Russell moved his scrap metal recycling operation to the adjacent property owned by VP Auto at 45 Apollo Drive, which was 100 feet closer to Plaintiff's property. Since Russell complied with the letter if not the spirit of the injunction, the sanctions motion was declared moot.

On September 3, 2013, West Wyoming Borough notified VP as owner of the property that the operation at 45 Apollo Drive was in violation of local land use restrictions. *See* Plaintiff's Exhibit 15. Russell had been in residence for approximately one month when the Borough sent VP a letter stating that there was "increased activity" at 45 Apollo Drive. The letter further indicated that during the period of VP's "inactivity" (since it "previously operated as a salvage yard"), all zoning decisions had been transferred to the Luzerne County Zoning Board. Id. The letter then indicated the need for a license to operate. Id. Pisaneschi testified that he had a 1977 Court Order which granted him the ability to operate his auto salvage business at 45 Apollo Drive. N.T. 7/29/14; 92, 14-23. He testified that until receiving the letter from West Wyoming Borough, he was not aware any further licensure was required. Id. 113, 13-17. On September 23, 2013, VP filed its first and only application for a junkyard license with the Borough, which was denied on November 11, 2013. (*See* Plaintiff's Exhibits 16-17). Pisaneschi, presumably on behalf of VP, appealed the denial of the application on December 6, 2013. The Petition to Appeal at Luzerne County Civil Action 2013-13823 was withdrawn by Pisaneschi on September 4, 2014, subsequent to the granting of the instant injunction.

In the instant matter, Plaintiffs filed a Complaint seeking a preliminary and permanent injunction pursuant to Pa.R.C.P. 1531 on May 14, 2014, which argues that Russell's business operations at 45 Apollo Drive should be enjoined because they constitute a trespass, private nuisance and public nuisance causing significant harm and injury to the Plaintiffs.

After a three-day hearing held on June 30, July 29 and July 30, 2014, this Court granted the preliminary injunction requested by the Plaintiffs and preliminarily enjoined the Defendants from engaging in scrap metal and recycling operations at 45 Apollo

3

Drive. Defendant filed a Notice of Appeal on August 12, 2014. Defendants filed a Statement of Errors Complained of on Appeal on September 2, 2014, to which Plaintiffs filed a Response on September 10, 2014. This Court submits this Opinion in support of its August 5, 2014 Order, which found all of the essential prerequisites necessary for granting a preliminary injunction were satisfied.

II.    Legal Analysis

Defendants allege nine errors in their Concise Statement, and we will address each of these issues in turn. Defendants first claim that this Court committed an error of law in denying their motion to dismiss based upon the Plaintiffs' non-compliance with the Pennsylvania Municipalities Planning Code, 53 P.S. §10617. The act provides in pertinent part,

> In case any . . .land is. . .maintained or used in violation of any ordinance enacted under this act. . .any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, **in addition to other remedies,** may institute any appropriate action or proceeding . . . to prevent, in or about such premises, any act, conduct, business or use constituting a violation. When any such action is instituted by a landowner or tenant, notice of that action shall be served upon the municipality at least 30 days prior to the time the action is begun by serving a copy of the complaint on the governing body of the municipality. No such action may be maintained until such notice has been given. (Emphasis added).

§10617 states that an action may be brought under the Municipal Planning Code in addition to other remedies. Plaintiff's Complaint brings an action against Defendants for three counts: trespass, private nuisance, and public nuisance. Although the Complaint details the illegalities involved in Russell's business, and they are relevant as a factor to be considered in establishing the essential prerequisites necessary to a preliminary injunction, at its core this is a tort action. The Plaintiffs did not seek an Order based on violations of municipal ordinances, and the Complaint does not contain a zoning enforcement count. Plaintiffs seek a preliminary injunction to abate a nuisance.

This issue was addressed in Karpiak v. Russo, 676 A.2d 270 (Pa. Super. 1995), where plaintiffs sought an injunction against a local landscaping business. Similar to the Plaintiffs in the instant matter, the Karpiak plaintiffs' complaint included counts of

4

trespass and private and public nuisance. However, the Karpiak plaintiffs also included a count seeking to enforce the local zoning ordinance. When the Karpiak defendants objected for failure to comply with the notice requirement in 53 P.S. § 10617, the trial court dismissed the zoning ordinance enforcement count but went on to address the trespass and nuisance counts on the merits. On appeal, the Superior Court likewise addressed the trespass and nuisance counts on the merits before separately addressing the zoning ordinance enforcement count. It appears from both the plain language of the statute, and from the court's treatment of the issue in Karpiak, that 53 P.S. § 10617 does not apply to trespass or nuisance actions. Accordingly, this Court properly denied the Defendants' Motion to Dismiss.

Defendants next argue that John Ferdinand ("Ferdinand"), an employee of Vibra-Tech Engineers, who conducted two noise studies for the Plaintiffs, should not have been accepted as an expert witness in the areas of sound and vibration.

The qualification of an expert witness lies within the trial court's discretion. Vicari v. Spiegel, 936 A.2d 503, 512 (Pa. Super. 2007). Pennsylvania's liberal standard for an expert witness' qualifications is set forth in Pa.R.E. 702: "If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation; if he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. Chanthavong v. Tran, 682 A.2d 334, 338 (Pa. Super. 1996). Further, "a witness may qualify as an expert if his or her experience or education logically or fundamentally embraces the matter at issue." Bindschusz v. Phillips, 771 A.2d 803 (Pa. Super. 2001).

Ferdinand testified that for the last ten years he has been employed by Vibra-Tech Engineers, a company that monitors and measures noise and vibration for mining and quarry industries, for commercial properties, and for community noise issues. N.T. 6/30/14, 88, 6-17. He further testified that he has a Bachelor's of Science degree in general science and a Master's degree in science and ecology, both from Penn State

5

University. Id. 88, 20-22 and 115, 19. His education was furthered with continuing education courses in sound and vibration analysis and geotechnical training. Id. 89, 2-4. Ferdinand also testified as to his practical experience in the field on several projects monitoring and predicting noise and vibration. Id. 112-113. Since the entire subject of his testimony was two noise studies conducted by Vibra-Tech in 2012 and 2014, it is clear that Ferdinand's knowledge, experience and training logically embraced the matter at issue and were able to assist the Court in understanding the evidence. As such, Ferdinand was properly qualified and accepted as an expert witness.

Defendants' next four contentions are related, and will be addressed together. Defendants claim that this Court should not have received evidence and/or testimony relative to 12 Apollo Drive, specifically: (a) Defendant Russell's previous operations at 12 Apollo Drive; (b) Judge Vough's Order granting an injunction; (c) the notes of testimony of the Luzerne County Zoning Hearing Board; and (d) the findings of fact and conclusions of law of the Luzerne County Zoning Hearing Board.

Defendant Russell's operations at 12 Apollo Drive from March 2012 through September 2013 are relevant to this matter. Both the Luzerne County Zoning Hearing Board and Judge Vough's injunction Order recognized that Russell's business operations at 12 Apollo Drive constituted a nuisance. In September, 2013, he moved his scrap metal and recycling operation to 45 Apollo Drive and continued essentially the same conduct. In an attempt to establish that the 1977 Court Order provides Russell with the right to conduct business as the successor to VP, Defendants claim that the activities conducted by Russell are the same or substantially similar to the activities conducted by VP at 45 Apollo Drive. As it is Russell's activities that are at issue, the specific type of activities he engaged in on the neighboring property at 12 Apollo Drive and the circumstances surrounding the same are relevant here.

Officer Jason Slatcoff, ("Officer Slatcoff") a West Wyoming Borough police officer and a joint witness for both parties, testified that he has been employed by the borough since 2009. N.T. 6/30/14; 19, 18-25; 20, 10-13. He testified that he cannot recall ever receiving any noise complaints with respect to 45 Apollo Drive prior to Russell being in possession of the property. Id. 23; 9-12. He also testified that the first

6

noise complaint he received regarding 12 Apollo Drive was when Russell was in residence at that property. Id. 22, 21-25; 23, 1-8.

Thomas Ciampi, ("Ciampi") a homeowner residing at 24 Ferretti Drive, West Wyoming for the past seventeen years, testified that his property line is about 65 feet from 45 Apollo Drive and only 30 feet from 12 Apollo Drive. Id. 157, 1-17. When he built his home in 1997, VP was at 45 Apollo Drive operating what appeared to be an auto parts reseller, where cars were stripped down and the parts sold. Id. 158, 21-23; 159, 16-18. He testified that he had a "clear vantage point" from which to observe the operations at 45 Apollo Drive and unequivocally stated that the nature of the operations changed "drastically" when Russell took up residence. Id. 163, 9-18. His testimony was clear regarding the noise coming from 45 Apollo Drive when VP was in residence – "There was never any noise, not even mechanical noise like impact wrenches or anything like that. We never even heard that. So, you know, there was never any issue with noise from 45 Apollo." Id. 160, 1-7. He further testified that in the seventeen years he lived nearby, he never heard loud noises or made a noise complaint with regard to 45 Apollo until Russell was operating there. Id. 159, 22-25, 160, 1-17 and 183, 3-5. According to Ciampi, VP Auto was completely out of business and was just a vacant lot for two or three years before Russell moved in. Id. 166, 9-13. Ciampi stated that things changed "drastically" in March of 2012 after Russell moved to 12 Apollo Drive. Id. 161, 1; and 162, 25. The constant noise and vibrations from Russell's operation resulted in Ciampi making noise complaints at "several council meetings" and by calling 911 with noise complaints as he was directed to do by the council. Id. 161, 16-20. He testified that since Russell moved to 12 Apollo Drive, the noise level was, "like someone banging two metal garbage cans in your ears all day long . . . It was just relentless from that point on." Id. 161, 6-7 and 11-12. Ciampi further testified that he could clearly see Russell's operation being moved from 12 Apollo next door to 45 Apollo in September of 2013, after Judge Vough issued an injunction ordering Russell to cease operations at 45 Apollo Drive. Id. 166, 1-3, 17-23 and 167, 4-5. Ciampi testified that since moving, the noise level has not changed. Id. 170, 2.

James Dennis testified that since 2009 he has lived at 8 Ferretti Drive, which is located about 120 yards from the Plaintiffs' property and approximately 310 yards from

7

45 Apollo Drive. Id. 150, 1-24. He had no problems with noise coming from either 12 or 45 Apollo Drive until Russell began his operations there. Id. 151, 1-12; 163, 3-5. Mr. Dennis testified that prior to Russell moving from 12 to 45 Apollo, he was under the impression that the property had been closed because he had not seen it "operational". Id. 153, 19-21. He realized that it was operational when he drove by and saw empty containers "smashing on the concrete." Id. 153, 23-25.

Russell himself answered the question, "Why do you think you would make less noise at 45 than you made at 12?" by responding "Because I didn't think I made a lot of noise at 12." N.T. 7/29/14; 44, 8-11. Although at the hearing before us he indicated his previous testimony was incorrect, Russell testified about the status of VP's business in 2012 at the Luzerne County Zoning Board Hearing: "This was a junkyard. He's been out of business. We don't really know what happened to him; he just crushed all his cars and left. It's just an empty lot sitting there now." (See Plaintiff's Exhibit 10).

Although VP operated at 45 Apollo for over thirty years, there had been no complaints about the property before Russell leased the property. Likewise, there were no complaints about any operation at 12 Apollo Drive until Russell was in residence. Conversely, there had been a number of complaints about 12 Apollo Drive dating to the time that Russell was operating his business there, ultimately culminating in the denial of a special exception by the Luzerne County Zoning Hearing Board and the granting of the preliminary injunction by Judge Vough. Defendants argue that Russell's business operations are "grandfathered in" because VP has permission to operate via a 1977 court order, and Russell is continuing the same type of business as VP's operation. N.T. 7/29/14; 94, 2-3. The believable and credible testimony and evidence established both that 1) prior to Russell's entry in August of 2013, there was a substantial length of time wherein no auto salvage business operations were conducted by VP at 45 Apollo Drive; and 2) Russell's operations were dissimilar to the operations that were conducted by VP at the time it occupied the same property. (See Plaintiff's Exhibit 15; N.T. 6/30/14; 30, 8-12; 163, 9-18; 166, 9-13; N.T. 7/29/14; 97, 8-13; 153, 19-21)

Evidence as to 12 Apollo Drive is relevant as to the differences between the activities previously conducted by VP and those that were being conducted by Russell.

8

Defendants next contend that Plaintiffs failed to prove the existence of a private or public nuisance. A nuisance may be public, private, or both public and private. *See* <u>Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enters, Inc.</u>, 237 A.2d 342, 348 (Pa. 1968). As our Supreme Court stated, the "difference between a public and private nuisance does not depend upon the nature of the thing done, but upon the question of whether it affects the general public or merely some private individual or individuals." <u>Youst v. Keck's Food Service</u>, 94 A.3d 1057, 1071 (Pa. Super. 2014), quoting <u>Phillips v. Donaldson</u>, 112 A. 236, 237-238 (Pa. 1920).

Restatement (Second) of Torts §822 contains the authoritative definition of private nuisance. <u>Kembel v. Schelgel</u>, 478 A.2d 11 (Pa. Super. 1984). Section 822 provides:

§ 822. General Rule

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

The Restatement indicates that a defendant is not subject to liability for an invasion unless the invasion caused significant harm, which is defined as:

§821F. Significant Harm

There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.

Comment C to §821F further explains "significant harm" -- "By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance. The law does not concern itself with trifles, and therefore there must be a real and appreciable invasion of the plaintiff's interests before he can have an action for either a public or private nuisance. . .in the case of a private nuisance, there must be a real

9

and appreciable interference with the plaintiff's use or enjoyment of his land before he can have a cause of action."

"When [the invasion] involves only personal discomfort or annoyance, it is sometimes difficult to determine whether the invasion is significant. The standard for the determination of significant character is the standard of normal persons or property in the particular locality. If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant." Karpiak, supra, at 273.

Plaintiff Charles Umphred testified that he and Kennelly purchased the lot at 26 Ferretti Drive in 1997 but did not build their home until 2002. N.T. 7/29/14; 164, 9-13. Before purchasing the property, they visited neighbors and inquired as to the noise level and other factors affecting the property to make sure the property was satisfactory to them. Id. 166, 1-12. During the five year gap between purchasing and building their home, the Plaintiffs visited the property often. Id. 167, 7-8. Regarding why the location of the property was important, Umphred testified that Kennelly is legally blind, cannot drive, and needs to live close to her chiropractic office so that she would be able to walk to work. Id. 167, 20-22; 168, 2-12. Umphred testified at length about the time and care that went into building and landscaping the home. The house is an eco-friendly, energy efficient round home. Id. 170, 2-5. The Plaintiffs did much of the landscaping themselves, and it is extensive, including 80-100 trees, a waterfall, walking garden, stone structures, large patio, pond and gardening products brought from Japan, Washington State, and others gifted by friends and family members. Id. 171, 1-20.

Umphred heard no noises coming from either 12 or 45 Apollo Drive at any point in the five years he visited the property before building. Id. 169, 1-5. In fact, the property was so quiet, it "felt like you were out in the country somewhere." Id. 169, 13-14. When Russell began operating at 12 Apollo Drive in March of 2012, Umphred testified that he was woken up at about 3:00 am by the sound of trucks and heavy machinery making a lot of noise. Id. 172, 18-21. This went on for about a week. Id. 172, 23-24. After the first week, the noises never abated, continuing with "no rhyme or reason" from 6:00 am until 9:00 p.m. Id. 173, 12-24. Although neither he nor Kennelly had ever made any noise complaints about any property in the past, Umphred called 911,

10

complained to borough council, and talked to Russell in an effort to decrease the noise. Id. 172, 25; 174, 2-23; 202, 20-22. For approximately one week, the noise was lessened and then began again. Id. 174, 12-16. In another attempt to stop the noise, Plaintiffs intervened in Russell's hearing for a special exception before the Luzerne County Zoning Hearing Board. Id. 175, 2-22. After Russell's application for a special exception was denied, Umphred testified that the noise from 12 Apollo Drive continued. Id. 176, 3-15. Even after West Wyoming Borough sought and received an injunction from Judge Vough, Umphred testified that the noise did not stop until the Borough again sought relief in court. Id. 178, 12-25; 179, 1-5. When Russell technically complied with the injunction by moving to 45 Apollo Drive, the noise was louder. Id. 178, 15. Umphred testified about the effect of Russell's operations at 45 Apollo Drive:

> "It's the sounds of cars crashing. . .you jump and your heart races. And that's kind of been my life and [Plaintiff] Cynthia [Kennelly's] life for the last two years. You never know when the cars are going to crash, so you can't get yourself ready for it. And they don't crash all the time, but when they crash your heart races, your mind kind of goes numb. Sometimes it's so. . .loud, if all the windows are shut, there's actually, like, a concussion inside the house. You can actually feel it. You can hear the things shaking."

Id. 179, 7-17.

Umphred testified that as a result of Russell's operations his business has suffered, and he has sleepless nights and is suffering from depression. Id. 179, 18-22. He no longer enjoys spending time at his home. Id. 179, 22-23.

Plaintiff Cynthia Kennelly testified that she has varied work hours and is often home during the work day. Id. 208, 25; 209, 1-2. She testified about the effect the noise from Russell's operation has had on her. "Everyone is saying it sounds like cars crashing, and technically that's what it is because they're crashing metal in cars. But it's the same feeling you get from being on a highway and all of a sudden you hear a crash, a car collision, you know, and all the stress and anxiety and adrenaline that goes with that. It. . .is very disturbing, and it's unpredictable." Id. 209, 7-13.

Even after West Wyoming Borough passed an amended junkyard ordinance, the Plaintiffs testified that the excessive noise continued. Russell testified that he met with two Borough council members to discuss potential working hours. Id. 74, 13-23.

11

Subsequent to that meeting, the Borough passed the amended ordinance detailing permissible times of operation, and Russell testified that he has complied with operating during the hours set forth. Id. 74, 7-9; 75, 21-25; 76, 1-3. Umphred testified that there were at least two occasions in the nine weeks since the ordinance was in effect that Russell was non-compliant. Id. 188, 19-22. Umphred further testified that even if Russell was operating in accordance with the hours mandated by the new ordinance, the excessive noise and noise violations generated by his business continue. Id. 200, 3-8. Kennelly agreed and said that the noise continued to be excessive and in violation of the noise ordinance even after the amended junkyard ordinance was in effect. Id. 207, 23-25; 208, 2-7. Although she was not specific, she testified that she heard excessive noise "many, many times" after the passing of the amended junkyard ordinance. Id. 218, 6. Both Plaintiffs specifically denied that they have a particular susceptibility to noise. Id. 186, 18-19; 210, 16-24.

When asked about his operations, Russell testified that he drops metal from a bin or front end loader into a truck from a height of up to five feet and that he is incapable of controlling the noise involved. N.T. 7/29/14; 54, 12-25; 56, 1. In addition, Russell testified that his operations at 45 Apollo involve crushing a few cars a week with an excavator. Id. 59, 16-18. Although Russell testified that he does not currently operate on the weekends, he has done so in the past. Id. 62, 3-6. He initially became aware that neighbors were complaining about his operations when he was at 12 Apollo Drive and working between 2:00 and 4:00 a.m. Id. 72, 9-11. Russell testified that he conducted "business as usual" and did nothing to reduce the noise or deal with the complaints he received regarding 12 Apollo Drive or 45 Apollo Drive Id. 72, 20-25; 73, 1-6.

Furthermore, there was ample testimony that the business operations at 45 Apollo Drive resulted in an invasion of the Plaintiff's interest in the use and enjoyment of their land that was, at a minimum, unintentional but negligent or reckless. Furthermore, the Plaintiffs have established that the invasion was a significant harm of the type that normal persons living in the community would find seriously annoying and intolerable.

Additionally, Plaintiffs have proven that Russell's scrap metal recycling activities result in a public nuisance.

§ 821B of the Restatement of Torts defines a public nuisance as:

12

(1) ...an unreasonable interference with a right common to the general public.

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

    (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

    (b) Whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

    (c) Whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

Diess v. Department of Transportation, 935 A.2d 895 (Pa. Cmwlth. 2007).

Comment C to § 821F defines significant harm in the instance of public nuisance to require that the plaintiff suffer "particular harm, of a kind different from that suffered by other members of the public exercising the public right. The harm must be "significant in character or . . . the action cannot be maintained."

If a nuisance interferes with the public right and with the use and enjoyment of the plaintiff's land, it is also a private nuisance. *See* Comment D § 821C. "In this case the harm suffered by the plaintiff is of a different kind and he can maintain an action not only on the basis of the private nuisance itself, but also, if he chooses to do so, on the basis of the particular harm from the public nuisance." Id.

The evidence and testimony established that the activities conducted at 45 Apollo Drive resulted in a public nuisance. Officer Slatcoff testified with regard to the activities at 45 Apollo Drive. He stated that he prepared an April 29, 2014 police report indicating that he observed an excavator operating at 45 Apollo Drive. He watched the excavator "lift a large dumpster into the air and bang it against the ground several times." N.T. 6/30/14 at 33, 20-24. He said the dumpster being banged against the ground made noise. Id. at 34, 12-13. Kennelly testified that, from inside her house, the dumpster sounded like "a bomb going off." N.T. 7/29/14 at 207, 9.

Ciampi testified that the neighborhood he and the Plaintiffs live in is "extremely quiet" with the exception of Russell's operations. N.T. 6/30/14, 175, 10-11. There are

13

about twelve homes on a single street with a cul-de-sac, of which he and the Plaintiffs live on either side. Id. 174, 19-21. He likened the sound of Russell's "loading and unloading metal; dropping metal, from ...crane height of 30 feet into...metal dumpsters" to the sound of "banging two metal garbage cans in your ear all day long." Id. 161, 3-7. He stated that the metal noises were relentless and "drive you crazy." Id. 161, 11-12. Ciampi testified that he owns two properties side-by-side on Ferretti Drive and he resides in a large home on one of them and intended to build a smaller home in which to retire on the second property. Id. 6/30/14, 175, 14-19. He no longer wishes to live there, both properties are for sale, and Ciampi testified that his property values have declined because of Russell's business. Id. 175, 14-25 and 176, 1-2.

Since August of 2012, Kelly Kaslavage has resided at 21 Moosic Street, on property that is separated from 45 Apollo Drive by a railroad track. N.T. 7/29/14, 10, 22-23 and 11, 1. She testified that the noise from 45 Apollo has "grown tremendously in noise" since the previous summer and that it has been "terrible loud." (sic) Id. 13, 12-16. The noise sounded "like cars crashing, banging, sounds like. . .a dumpster being lifted and just kind of slammed onto the ground. . .you can just hear a lot of metal being banged around." Id. 13, 20-25 and 14, 1-3. The noises go on "all day long". Id. 14, 19. She can hear the noises outside and inside the house. Id. 15, 1. She described the noise as "very annoying." Id. 18, 20.

James Dennis ("Dennis") testified that the sound of smashing metal from 45 Apollo Drive sounds "like Beirut." Id. 153, 23; 154, 6. He further testified that the sound of smashing metal from 45 Apollo Drive definitely affects his quality of living. Id. 154, 6-11.

In addition to the testimony presented by the Plaintiffs, the Luzerne County Zoning Hearing Board, in denying Russell's application for a special exception to operate his business at 12 Apollo Drive, found that the Plaintiffs and other neighboring residents "were so much affected [by the scrap metal recycling operations] already conducted by Russell]. . .that no reasonable safeguards or conditions could be placed upon [Russell] to implement the purpose of the [Zoning Ordinance] including the reduction of noise pollution to the lowest level economically feasible." *See* Plaintiff's Exhibit 8.

The Plaintiffs established that the scrap metal and recycling activities at 45 Apollo Drive constituted an unreasonable interference with a right common to the general public. As the testimony showed, Russell's activities clearly involved a significant interference with the public peace. Russell's conduct in opening the scrap metal and recycling operation is of a continuing nature and Russell knows or has reason to know that his business has a significant effect on the public right. Additionally, his conduct in operating without special exception or license is proscribed by statute. Plaintiffs have proved that Russell's business operation is a private and a public nuisance.

The Defendants presented conflicting testimony. This Court found the testimony of the Plaintiffs' witnesses significantly more credible. The Court, sitting as the finder of fact, is charged with resolving any conflicts in the evidence. Merrel v. Chartiers Valley School District, 51 A.3d 286, 293 (Pa. Commw. 2012).

Defendants next claim that the essential prerequisites for a preliminary injunction were not satisfied. To the contrary, Plaintiffs met all of the prerequisites for the granting of a preliminary injunction.

Courts of equity have the power to issue injunctions to prevent the commission or continuance of acts that prejudice the interests of an individual, the community or the public generally. Bruhin v. Commonwealth, 320 A.2d 907, 910 (Pa. Commw. 1974). The party seeking a preliminary injunction must establish the following six prerequisities:

(1)     that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

(2)     that greater injury would result from refusing an injunction that from granting it, and concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

(3)     that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

15

(4)        that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or in other words, must show that it is likely to prevail on the merits;

(5)        that the injunction it seeks is reasonably suited to abate the offending activity; and

(6)        that a preliminary injunction will not adversely affect the public interest.

Warehime v. Warehime, 860 A.2d 41, 46-47 (Pa. 2004).

All of the essential prerequisites must be satisfied. Synthes USA Sales, LLC v. Harrison, 83 A.3d 242 (Pa. Super. 2013).

Plaintiffs established that the first prerequisite was satisfied. Both Plaintiffs and their neighbors testified that they are being denied the quiet use and enjoyment of their property. Moreover, Umphred testified that his business has suffered, he has sleepless nights and is suffering from depression. N.T. 7/29/14 179, 18-22. Kennelly testified about the stress and anxiety that the noises from Russell's business operation cause her. Id. 209, 11-13. Plaintiffs have demonstrated immediate and irreparable harm that cannot be adequately compensated by damages.

The second prerequisite was satisfied as well. Because Russell's business is an unlicensed and unpermitted business, the injunction results in no cognizable loss to Defendants. Refusing to enjoin Defendants from operating an illegal business would result in a greater injury to Plaintiffs and to the public than granting such an injunction.

Plaintiffs have also established the third prerequisite by showing that the issuance of the injunction will restore the parties to the position they were in prior to Russell's engaging in scrap metal and recycling operations at 45 Apollo Drive. Defendants would be free to use the property owned by VP for any lawful purpose that does not cause a trespass or nuisance to Plaintiffs and which complies with applicable laws.

Likewise, the fourth prerequisite has been established. Plaintiffs showed that the activity they seek to restrain is actionable, that their right to relief is clear, and that the wrong is manifest. Plaintiffs have established through credible testimony that Russell's business operation constitutes both a private and a public nuisance and that they are likely to prevail on the merits.

16

The fifth prerequisite, that the injunction is reasonably suited to abate the offending activity, is also satisfied. Considering the fact that the Defendant is operating without a license or special exception and has a history of ignoring noise complaints, a decision from the zoning board and even a court order, this Court finds that no remedy short of an injunction will abate the nuisance.

Lastly, the granting of this injunction will not adversely affect the public interest. Because Russell's business operation is unlawful and Plaintiffs have established that it constitutes a nuisance, an injunction would in no way adversely affect the public interest.

Finally, Defendant advances the argument that this Court did not comply with legal precedent in noise and vibration cases. In the cases cited by Defendants, the businesses the courts refused to shut down were lawful businesses. In Hannum v. Gruber, 31 A.2d 99 (Pa. 1946), the Defendants operated a dye works as a legal business. Likewise in Robb v. Carnegie, 22 A. 649 (Pa. 1891), where the Defendants manufactured coke from coal, and Houghton v. Kendrick, 132 A. 166 (Pa. 1926), where the City of Philadelphia owned and used one of its buildings as a stable, and Molony v. Pounds, 64 A.2d 802 (Pa. 1949) where the Defendant owned a restaurant, there were no allegations that the businesses were not lawful. The Hannum court recognized the significance of the lawfulness of the defendant's business:

> "A fair test as to whether a business **lawful in itself** or a particular use
> of property, constitutes a nuisance is the reasonableness or unreasonableness
> of conducting the business or making the use of the property complained of
> in the particular locality and in the manner and under the circumstances of the
> case." (Emphasis added).

Hannum, supra, at 102, quoting Ebur v. Alloy Metal Wire Co., 155 A. 280, 282 (Pa. 1931).

This case is inapposite in that the evidence shows Russell's business is an unpermitted, unlicensed, illegal business. Russell's stake in the business is not the same as the business owners in the cases cited by the Plaintiffs. Although the focus of this Court in granting the injunction was the excessive noise generated by Russell's business, the fact that Russell does not possess the necessary land use approvals, permits or licenses to conduct scrap metal recycling operations at 45 Apollo Drive differentiates this case from those cited by Defendants.

17